IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

KERMIT C. FRENCH,

      Plaintiff,

v.                                       Case No.: 1:19-cv-00083

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-433. The matter is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 17, 18, 21). The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be

1

**DISMISSED** and removed from the docket of the Court.

## I.    <u>Procedural History</u>

On June 5, 2015, Plaintiff, Kermit C. French ("Claimant"), completed an application for DIB, alleging a disability onset date of May 10, 2013 due to "PTSD, right hand tremors, hypertension, enlarged prostate, rock dust in lungs, high hernia, and cysts on liver." (Tr. at 189, 208, 212, 289-90). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 22). Claimant filed a request for an administrative hearing, which was held on August 29, 2017 before the Honorable Jon K. Johnson, Administrative Law Judge (the "ALJ"). (Tr. at 36-59). By written decision dated January 10, 2018, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 19-35). The ALJ's decision became the final decision of the Commissioner on December 4, 2018 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of Proceedings. (ECF Nos. 7, 8). Thereafter, Claimant filed a Motion for Judgment on the Pleadings and Memorandum in Support, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 17, 18, 21). Consequently, the matter is fully briefed and ready for resolution.

## II.    <u>Claimant's Background</u>

Claimant was 59 years old on his alleged onset date and 63 years old on his date last insured. He has four-year college degrees in Travel Management and Criminal Justice, and he previously worked as a coal miner and correctional officer. (Tr. at 29, 44-45, 52-53).

### III.    <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments

do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the

4

impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2016. (Tr. at 24, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from May 10, 2013, his alleged onset date, through his date last insured. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant's benign prostatic hypertrophy and essential hypertension were severe impairments. (Tr. at 25, Finding No. 3). The ALJ also considered Claimant's gastroesophageal reflux, plantar fasciitis, hyperglycemia, hearing loss, depression, posttraumatic stress disorder, and generalized anxiety, but

the ALJ found that the impairments were non-severe. (Tr. at 25). The ALJ further determined that Claimant's alleged hand tremors and irregular heartbeat were not medically determinable impairments. (*Id.*). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 26-27, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he would need a workstation near restroom facilities, such as working indoors in an ordinary commercial or industrial facility.

 (Tr. at 27-29, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform any of his past relevant work. (Tr. at 29, Finding No. 6). Therefore, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. 29-31, Finding 7 through 10). The ALJ considered that (1) Claimant was born in 1953 and was defined as an individual of advanced age on his alleged onset date, and he changed age category to an individual closely approaching retirement age prior to his date last insured; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of his transferable job skills. (Tr. at 29-30, Finding 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a factory helper, cleaner, and laundry worker. (Tr. at 30-31, Finding

No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 31, Finding No. 11).

## IV.    Claimant's Challenge to the Commissioner's Decision

In his sole challenge to the Commissioner's decision, Claimant contends that the ALJ failed to adequately consider Claimant's psychological impairments and erred by finding them to be non-severe. (ECF No. 18 at 7). In support of his argument, Claimant cites his own testimony and the record of a single visit that he had with a psychiatrist, Safiullah Syed, M.D., in April 2015. (*Id.* at 8). Claimant contends that the ALJ gave no real consideration to Dr. Syed's report and "wholly disregarded" the Global Assessment of Functioning ("GAF") score of 50 that Dr. Syed assigned to Claimant. (*Id.* at 8-9).

In response to Claimant's challenge, the Commissioner asserts that the inquiry is not whether there is another conclusion that, in Claimant's opinion, the ALJ should have reached regarding the severity of Claimant's impairments, but whether the decision made is supported by substantial evidence. (ECF No. 21 at 7). The Commissioner points out that the ALJ performed the special technique based on a review of all of the relevant evidence and found that Claimant had no more than mild difficulties in the broad mental functional areas. The Commissioner emphasizes the ALJ's reliance on Claimant's lack of ongoing specialized mental health treatment, noting that Claimant saw Dr. Syed on only one occasion after which he began taking anti-anxiety medication that improved his reportedly mild anxiety. (*Id.* at 8-9). The Commissioner further cites that the ALJ also reasonably relied on the opinions of state agency psychologists, who found Claimant's mental impairments to be non-severe. (*Id.* at 9). Contrary to Claimant's argument, the Commissioner states that the ALJ explicitly

considered the GAF score assigned by Dr. Syed, and the ALJ explained his reasons for giving it little weight. (*Id*. at 9-10).

## V.    Relevant Evidence

The undersigned reviewed all evidence of record and summarizes below the evidence that is most relevant to the issues in dispute:

### *A. Treatment Records*

Claimant reported to his primary care provider, Christie Hurt, P.A.,[1] on August 30, 2012 and January 4, 2013 that he felt increasingly stressed, but denied having any anxiety or depression. (Tr. at 410, 412). At his subsequent visit with P.A. Hurt on February 11, 2013, Claimant reported anxiety and stress related to his lawsuit against his former employer concerning Claimant's termination from employment. (Tr. at 407). Claimant denied having any depression, however. (*Id*.). On examination, Claimant had an anxious mood, but he was alert, oriented in three spheres, had intact recent and remote memory, and demonstrated good insight and judgment. (Tr. at 408). P.A. Hurt noted the same findings in the clinical records of Claimant's visits on August 12, 2013 and February 18, March 4, May 2, May 16, and June 11, 2014. (Tr. at 391, 393, 395, 398-99, 401-02, 405). Claimant advised P.A. Hurt on February 18 and March 3, 2014, that he was "now working some."  (Tr. at 398, 401). Claimant also saw his urologist, James E. Cauley, M.D., for annual appointments on August 13, 2013 and August 19, 2014. Claimant related that he did not have any depression or loss of interest in activities, and his mood was calm. (Tr. at 306-07, 316-17).

On August 7 and 21, 2014, Claimant told P.A. Hurt that he was not suffering

---

[1] P.A. Hurt's records were co-signed by supervising physicians.

from anxiety or depression. (Tr. at 384, 387). The objective findings were the same as his prior appointments, including an anxious mood, but Claimant was alert, oriented in three spheres, and he had intact recent and remote memory and good insight and judgment. (Tr. at 385, 388). On December 15, 2014 and February 3 and March 3, 2015, Claimant told P.A. Hurt that he did not have panic attacks, but he suffered from stress and anxiety every day and had one episode of suicidal thoughts in the past year. (Tr. at 376, 378, 381). Claimant still felt that he was wronged by his employer and never received justice. (*Id.*). His psychiatric examination findings were unchanged, with no abnormalities other than an anxious mood. (Tr. at 377, 379, 382). P.A. Hurt diagnosed Claimant with generalized anxiety and referred him to Dr. Syed. (*Id.*).

Claimant saw Dr. Syed on one occasion—April 24, 2015. Claimant related that he was a coal miner for 20 years and then a correctional officer for 14 and one-half years. (Tr. at 286). He stated that he had a good record as a correctional officer, but had issues with his prostate and was told to either "carry a bottle or wear a diaper" to accommodate his bathroom needs. (*Id.*). Claimant stated that when he refused to do so, he was terminated. He lost his appeal of the termination "because apparently the state of West Virginia does not recognize the Americans Disability Act." (*Id.*). Claimant told Dr. Syed that he developed anxiety, depression, and other symptoms since his termination. (*Id.*). He noted that Claimant's GAF equivalent was 50.[2] (Tr. at 287). Dr.

---

[2] The Global Assessment of Functioning ("GAF") Scale is a 100-point scale that rates "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," but "do[es] not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic Statistical Manual of Mental Disorders*, Am. Psych. Assoc, 32 (4th Ed. 2002). On the GAF scale, a higher score correlates with a less severe impairment. The GAF scale was abandoned as a measurement tool in the latest edition of the *Diagnostic and Statistical Manual of Mental Disorders*, DSM-5, in part due to its "conceptual lack of clarity" and its "questionable psychometrics in routine practice." DSM-5 at p. 16. Am. Psych. Assoc. 32 (5th Ed. 2013). A GAF score of 41-50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).

Syed diagnosed Claimant with moderate major depressive disorder and moderate generalized anxiety disorder. (*Id.*). Dr. Syed suggested medications and counseling. Claimant declined to take any medications, but he was amenable to counseling. (Tr. at 287-88).

On June 2, 2015, Claimant followed up with P.A. Hurt. Claimant again felt anxious and stressed, but otherwise had no psychiatric abnormalities on examination. (Tr. at 373-74). Claimant related to Dr. Cauley on July 28, 2015 that he did not have any depression or loss of interest in activities, and his mood was calm. (Tr. at 297-98). On August 4, 2015, P.A. Hurt noted the same complaints and findings as Claimant's previous appointments. (Tr. at 370-71). She stated that Claimant's generalized anxiety was mild and improving. (Tr. at 371). She renewed Claimant's prescription for buspirone. (*Id.*). Claimant's complaints and examination findings were the same at his appointments with P.A. Hurt on September 3 and 17, 2015; December 17, 2015; and January 14, February 11, and May 12, 2016. (Tr. at 354, 356, 357, 359, 360-61, 362, 364, 365-66, 367-68). He had an anxious mood, but was alert, oriented in three spheres, and had intact recent and remote memory and good insight and judgment. (*Id.*). P.A. Hurt refilled Claimant's buspirone prescriptions. (Tr. at 356, 368). P.A. Hurt again noted on May 12, 2016 that Claimant suffered from mild generalized anxiety. (Tr. at 356).

### B. Evaluations and Opinions

On July 4, 2015, state agency psychologist, John Todd, Ph.D., performed a Psychiatric Review Technique (PRT) based upon his review of Claimant's records. Dr. Todd assessed Claimant with mild restrictions in social functioning and maintaining concentration, persistence, or pace, but he had no restriction in activities of daily living

and no episodes of decompensation of extended duration. (Tr. at 89). Dr. Todd did not believe the evidence showed severe mental limitations in Claimant's case. Thus, Dr. Todd opined that Claimant's affective and anxiety-related disorders were non-severe. (*Id.*). Gary W. Buffone, Ph.D., also reviewed Claimant's file and affirmed Dr. Todd's assessment on November 9, 2015. (Tr. at 101).

### C. Claimant's Statements

Claimant completed an Adult Function Report on June 11, 2015. He stated that he could not concentrate, that he was upset by "the least little things," and he "could not remember things." (Tr. at 228). His daily activities included watching television, reading, preparing meals, caring for his two dogs, and mowing the lawn every week. (Tr. at 229). Claimant acknowledged that he could mow the yard and unload the dishwasher without any help or encouragement from others, and stated that he did not need any special reminders to take care of his personal needs or take his medicine. (Tr. at 230). In terms of activities, Claimant stated that he went outside daily, drove, and could go out alone. (Tr. at 231). He shopped in stores once or twice per week for medicine, groceries, dog food, and clothes. (*Id.*). He could pay bills, count change, handle a savings account, and use a checkbook or money orders. (*Id.*). His daily hobbies included reading and watching television, but he did not do them "very well," stating that his mind wandered to other things and he could not concentrate. (Tr. at 232). Claimant stated that he did not spend time with others. (*Id.*). He expressed difficulty with his memory and concentration, but affirmed that he did not have any difficulty completing tasks, understanding, following instructions, or getting along with others. (Tr. at 233). He could satisfactorily follow written and spoken instructions. (*Id.*). He did not handle stress or changes in routine "too good," but got along "good"

with authority figures and was never fired or laid off from a job due to problems getting along with others. (Tr. at 234).

Claimant also testified at his administrative hearing on August 29, 2017. He explained that he worked for over 14 years as a correctional officer before he was "unlawfully terminated over a doctor's excuse." (Tr. at 44-46). Claimant testified that he appealed his termination through the state grievance procedure, but he lost. (Tr. at 46). He stated that he became obsessed over the loss of his job and developed post-traumatic stress disorder and anxiety (Tr. at 46, 49). He saw his primary care providers for his mental health symptoms, but Claimant confirmed that they did not refer him to a mental health professional. (Tr. at 46-47). Claimant testified that he lost ten pounds in the prior few months and had trouble sleeping, decreased energy, and trouble concentrating. (Tr. at 49-50). His daily activities included doing some yardwork and loading and unloading the dishwasher. (Tr. at 50). He preferred to be alone, and, since he developed anxiety, he stopped going to church because he was "afraid to go anywhere." (Tr. at 50-51).

## VI.    **Scope of Review**

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.

1966)). When examining the Commissioner's decision, the Court does not conduct a de novo review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). Instead, the Court's role is limited to insuring that the ALJ followed applicable regulations and rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.   Discussion

Claimant contends that the ALJ failed to adequately consider his psychological impairments and erred in finding them to be non-severe. (ECF No. 18 at 7). At the second step of the sequential evaluation process, the ALJ concludes whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. § 404.1522(a); SSR 96-3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (citing SSR 85-28, 1985 WL 56856). Of relevance to the instant matter, basic work activities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

As previously explained, when a claimant alleges a mental impairment, the ALJ must apply the special technique at step two of the analysis. If the ALJ determines that

13

the claimant has a medically determinable mental impairment, the ALJ rates the degree of functional limitation in four broad categories, known as the "paragraph B" criteria, which include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c).[3] A rating of "none" or "mild" in the foregoing criteria will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1).

Importantly, the claimant bears the burden of proving that an impairment is severe, *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir. 1983), and does this by producing medical evidence establishing the condition and its effect on the claimant's ability to work. *Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir. 2003). The mere presence of a condition or ailment is not enough to demonstrate the existence of a severe impairment. Moreover, to qualify as a severe impairment under step two, the impairment must have lasted, or be expected to last, for a continuous period of at least twelve months and must not be controlled by treatment, such as medication. *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other

---

[3] The paragraph B criteria were revised effective January 17, 2017. The new criteria are applied to claims filed on or after the effective date *and to any claims pending on or after the effective date.* Claimant's application was filed in 2015, but it was still pending on January 17, 2017, and the ALJ's decision was not issued until 2018. Therefore, the ALJ correctly applied the new paragraph B criteria to Claimant's application. *Carroll v. Berryhill,* No. 7:17-CV-215-KS, 2019 WL 938879, at *2–3 (E.D.N.C. Feb. 26, 2019); *Kristyn H. v. Berryhill,* No. 7:18-CV-351, 2019 WL 2570531, at *8 (W.D. Va. June 21, 2019); *Maynard v. Berryhill,* No. 2:17-CV-4131, 2018 WL 6036482, at *4 (S.D.W. Va. July 27, 2018), *report and recommendation adopted as modified,* 2018 WL 4659344 (S.D.W. Va. Sept. 28, 2018); *see* https://www.federalregister.gov/documents/2016/09/26/2016-22908/revised-medical-criteria-for-evaluating-mental-disorders.

hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987)); *see also Felton–Miller v. Astrue,* 459 F. App'x 226, 230 (4th Cir. 2011) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").

In evaluating the evidence at step two or subsequent steps of the sequential evaluation, the regulations in effect at the time of Claimant's application for benefits— and, thus, the regulations governing the ALJ's review—suggested "a hierarchy of medical opinions, with opinions by treating physicians generally being afforded the greatest weight, followed by examining sources, and finally, nonexamining sources." *Cook v. Colvin*, No. 2:15-CV-07181, 2016 WL 5661348, at *3 (S.D.W. Va. Sept. 29, 2016) (quoting *Bevans v. Colvin*, No. 3:13–12502, 2014 WL 4925431, at *3 (S.D. W. Va. Sept. 30, 2014)). A treating physician's opinion was to be given controlling weight when the opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with other substantial evidence. *Id.* Regardless of source, an ALJ was required to evaluate every medical opinion in accordance with the following factors: (1) whether the source has examined the claimant and the length and frequency of the examinations; (2) the nature and extent of any treatment relationship; (3) the extent to which the source's opinion was supported by the medical evidence in the record; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was rendered by a specialist in his or her area of specialty; and (6) other relevant factors." *Id.*; *see* 20 C.F.R. § 404.1527(c). However, while the ALJ had to consider the relevant factors, the ALJ was not required

to explicitly discuss each factor. *See Hardy v. Colvin*, No. 2:13-CV-20749, 2014 WL 4929464, at *2 (S.D.W. Va. Sept. 30, 2014). In addition, an ALJ's determination as to the weight to be assigned to a medical opinion is generally not disturbed absent some indication that the ALJ dredged up specious inconsistencies or did not give good reason for the weight afforded to a particular opinion. *Id.* (citing *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999)).

Here, the ALJ found that Claimant's depression, post-traumatic stress disorder, and generalized anxiety were medically determinable impairments. (Tr. at 25). Thus, the ALJ performed the special technique to evaluate whether Claimant's mental impairments caused more than minimal limitation in Claimant's ability to perform basic mental work activities. In the first functional area of understanding, remembering, or applying information, the ALJ found that Claimant had no limitation. (*Id.*). The ALJ noted that Claimant reported forgetting things easily, but he received no ongoing specialized mental health treatment, even informing Dr. Syed that he did not want medications, but would consider counseling. (*Id.*). In addition, the ALJ cited the objective findings of Claimant's coherent thought processes; absence of delusions; and fairly intact memory, insight, and judgment. (*Id.*). In the second functional area of interacting with others, the ALJ found that Claimant was mildly limited, noting that Claimant reported irritability, agitation, and little patience, and he appeared irritable and depressed during his April 2015 psychological examination. (Tr. at 26). Yet, the ALJ identified that Claimant had normal insight and orientation during that examination, and he reported shopping in stores, riding in a car, going outside daily, and having no problem getting along with others. (*Id.*). In the third functional area of concentration, persistence, or pace, the ALJ found that Claimant was mildly limited

16

because, despite Claimant's reported difficulty with concentration, Claimant watched television, read, prepared meals daily, used a dishwasher, drove, shopped, and could pay bills, count change, handle a savings account, use a checkbook/money orders, and satisfactorily follow written and spoken instructions. (*Id.*). Finally, in the area of adapting or managing himself, the ALJ found that Claimant had no limitation. (*Id.*). The ALJ cited that Claimant described decreased interest in activities, adding that he did not go out much. (*Id.*). However, Claimant stated that he had no impediment performing personal care, and he cared for dogs, prepared meals, and mowed his yard. (*Id.*). Overall, because Claimant's medically determinable mental impairments caused no more than mild limitation in any of the functional areas, the ALJ concluded that they were non-severe. (*Id.*). The ALJ discussed that the conditions were stable and resulted in no more than minimal effect on Claimant's ability to work. (Tr. at 25). Further, the ALJ explained that all of Claimant's non-severe impairments were either responsive to treatment, caused no more than minimal vocationally related limitations, and/or did not persist at a "severe" level for a continuous 12-month period or were expected to result in death. (*Id.*).

The ALJ stated that his assessment of Claimant's mental functional limitations was also consistent with the opinions of the state agency medical consultants. (Tr. at 26). The ALJ gave the opinions great weight based on the experts' specialized training, program knowledge, and detailed explanations for their opinions. (*Id.*). However, the ALJ assigned little weight to Claimant's GAF score. (*Id.*). The ALJ explained that GAF scores were not standardized; were used primarily for the purpose of planning and measuring the impact of treatment; and could be based on function, reported symptoms, or both, with the evaluator rarely documenting the precise support for the

GAF score. (*Id.*).

Claimant argues that his testimony and visit with Dr. Syed demonstrated that his mental impairments were severe. However, the mere fact that Claimant was diagnosed with mental conditions and prescribed medication does not establish that he had severe mental impairments. Rather, the ALJ appropriately considered whether the records demonstrated any associated functional limitations. *Cook*, 2016 WL 5661348, at *8 (citing *Gross*, 785 F.2d at 1166) (noting that mere presence of a psychological disorder is not disabling unless accompanied by a showing of related functional loss)).

In this case, the ALJ's analysis is very clearly supported by more than a scintilla of evidence in the record. Claimant reported to his primary care provider, P.A. Hurt, that he suffered from stress and anxiety over what he perceived to be an unjust termination from his job as a correctional officer. (Tr. at 354, 357, 376, 378, 381, 398, 401, 404, 407). However, he consistently denied depression, and, at times, Claimant even denied suffering from anxiety or stress. (Tr. at 297, 306, 316, 384, 387, 401, 407). Regardless, P.A. Hurt referred Claimant to a psychiatrist, Dr. Syed, who Claimant saw on one occasion in April 2015. Claimant related to Dr. Syed that he suffered from anxiety, depression, and other symptoms since his termination. (Tr. at 286). Dr. Syed diagnosed Claimant with moderate major depressive disorder and moderate generalized anxiety disorder. (Tr. at 287). Dr. Syed noted, without any additional explanation, that Claimant's GAF equivalent was 50. (*Id.*). Claimant declined Dr. Syed's offer to prescribe medication, but was amenable to counseling. (Tr. at 287-88). There is no record that Claimant ever saw Dr. Syed again, or received counseling. Rather, P.A. Hurt prescribed buspirone, and specifically documented that Claimant's

18

mild anxiety was improving. (Tr. at 371). As late as May 2016, P.A. Hurt noted that Claimant suffered from mild generalized anxiety. (Tr. at 356). Moreover, both state agency psychologists concluded that Claimant's mental impairments were non-severe. (Tr. at 89, 101).

With respect to the GAF score of 50 assessed by Dr. Syed, the DSM-IV included a GAF scale to rate an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness," with a higher score indicating an increased level of functioning. *Sizemore v. Berryhill*, 878 F.3d 72, 82 (4th Cir. 2017). However, the more recent fifth edition of the manual eliminated GAF scoring due to "its lack of conceptual clarity" and "questionable psychometrics in routine practice." *Id*. The SSA instructs ALJs to consider GAF scores as medical opinions, but emphasizes that a GAF score needs supporting evidence to be given much weight, and "[u]nless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Id*. Indeed, a "GAF score is never dispositive of impairment severity." *Id*. Here, the ALJ explicitly considered Claimant's GAF score, and provided good reasons for assigning it little weight. (Tr. at 26). Dr. Syed did not provide any additional support for the GAF score that he assigned at Claimant's one-time examination. As thoroughly discussed by the ALJ, the evidence both before and after Claimant saw Dr. Syed corroborated that Claimant suffered, at most, mild functional limitations from his mental impairments. Therefore, there was substantial evidence for the ALJ to assign little weight to the GAF score and conclude that Claimant's mental impairments were non-severe.

19

Furthermore, even assuming *arguendo* that the ALJ erred in analyzing Claimant's mental impairments at step two, such error would be harmless in this case because the ALJ found that Claimant had other severe impairments, proceeded with the sequential evaluation, and considered the effects of Claimant's mental impairments at subsequent steps of the sequential evaluation. In fact, the ALJ specifically stated that the step two finding was not an RFC assessment and specified that he incorporated the degree of limitation found in the paragraph B mental function analysis into the RFC finding. (Tr. at 26); *see Cook*, 2016 WL 5661348, at *9-10 (stating that even if the ALJ erred at step two with respect to the claimant's mental impairments, such error would be harmless because the analysis proceeded and the ALJ stated that the RFC determination reflected the degree of limitation found pursuant to the special technique analysis). The ALJ provided thoughtful explanation for his assessment of Claimant's mental functional abilities, and the justification is supported by the record of Claimant's conservative treatment, objective examination findings, daily activities, statements by his primary care provider that his anxiety was mild and improving, and the unanimous opinion evidence.

Overall, Claimant fails to identify any relevant conflicting evidence that the ALJ overlooked concerning his mental impairments, nor does he show that the ALJ failed to apply the correct law or that he made any other error that rendered his decision unsupported by substantial evidence. Claimant is simply asking the court to re-weigh the medical evidence and reach different conclusions than the ALJ, which is not the court's role in reviewing the Commissioner's decision. The Court must uphold the Commissioner's decision if it is supported by more than a scintilla of evidence. It is not the province of the Court under 42 U.S.C. § 405(g) to weigh the evidence, perform the

special technique to evaluate the severity of a claimant's mental impairments, or assess Claimant's RFC. Where, as in this case, the ALJ considered the evidence, provided logical reasons for his conclusions, applied the correct legal standards, and there is more than a scintilla of evidence to support the ALJ's findings, the Court must affirm the Commissioner's decision. Therefore, the undersigned **FINDS** that the ALJ's step two analysis of Claimant's mental impairments is supported by substantial evidence.

## VIII.  Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 17); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 21); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** December 16, 2019

Cheryl A. Eifert
United States Magistrate Judge

22